UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Bradford Cain Dopkins, | Case No. 24-cv-2276 (NEB/DLM) |
| Plaintiff, | |
| v. | |
| Fridley Police Department, Bridget McBride, Enis Vatres, Peter M. Mueller, Jeffrey A. Guest, Robert Stevens, James Mork, John Kotcheng, Kevin Titus, Matthew Schlenker, Perry Jones, Jennifer Fetrow, Travis Volk, Barry Sullivan, Karin McCarthy, Melissa M. Saterbak, Cathy Trevino, Anoka County Jail Name Unknown of State Employee Who Admitted Me to Jail, Anoka County Jail, Anoka County Attorneys Office, and Anoka County Public Defenders Office, | **ORDER AND REPORT AND RECOMMENDATION** |
| Defendants. | |

---

This action comes before the Court on Plaintiff Bradford Dopkins's (1) Complaint for Civil Rights Violation Under 42 U.S.C. § 1983 (Doc. 1); (2) Application to Proceed *In Forma Pauperis* ("IFP") Without Prepaying Fees or Costs (Doc. 2); (3) repossession-related motion received on June 13, 2024 (Doc. 4); (4) laptop-related motion received on June 24, 2024 (Doc. 7); and (5) payment-related motion received on July 15, 2024 (Doc. 16). For the reasons below, the Court recommends dismissing most of this action (except for one claim discussed below) and recommends denying the laptop-related motion. The Court also grants the IFP application, denies the payment-related motion as moot, denies

the repossession-related motion, and orders Mr. Dopkins to submit information needed to effect service for what remains of this action.

## BACKGROUND

**I.  MR. DOPKINS'S STATE-COURT PROCEEDINGS.**

In June 2018, authorities in Minnesota's Anoka County charged Mr. Dopkins with multiple offenses, including a count of making threats of violence (violating Minn. Stat. § 609.713, subd. (1)). (*See* Doc. 1 at 1, *State v. Dopkins*, No. 2-cr-18-3927 (Minn. Dist. Ct. June 13, 2018).[1]) An amended complaint in September 2018 added a count of first-degree assault (violating Minn. Stat. § 609.221, subd. (1)). In January 2021, Mr. Dopkins petitioned to plead guilty to the violent-threats and first-degree-assault charges. (*See* Reg. of Action, *State v. Dopkins*, No. 2-cr-18-3927 (Minn. Dist. Ct.) ("State-Court Docket"); Pet. to Enter Plea of Guilty in Felony Case Pursuant to R. 15 at 1–2, *State v. Dopkins*, No. 2-cr-18-3927 (Minn. Dist. Ct. Jan. 11, 2021).) The trial court sentenced Mr. Dopkins to 117 months' imprisonment. (*See* Order and Warrant of Commitment 1–2, *State v. Dopkins*, No. 2-cr-18-3927 (Minn. Dist. Ct. Jan. 29, 2021).)

After an unsuccessful petition for postconviction relief, Mr. Dopkins appealed, and on June 3, 2024, the Minnesota Court of Appeals found that his "guilty plea to first-degree assault lacked an adequate factual basis and was therefore inaccurate." *Dopkins v. State*,

---

[1] Several documents from No. 2-cr-18-3927 cited in this Order and Report and Recommendation are absent from this action's docket. But the Court may take judicial notice of public state-court records. *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citing *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999)); *Bethune v. Baker*, No. 21-cv-2640 (DSD/DTS), 2024 WL 2862132, at *1 n.2 (D. Minn. June 6, 2024) (citing cases).

No. A23-1355, 2024 WL 2813952, at *1 (Minn. Ct. App. June 3, 2024), *review denied* (Minn. Sept. 17, 2024).[2] The Court of Appeals thus "reverse[d] and remand[ed] in part for Dopkins to withdraw his guilty plea to that offense." *Id.* at *8.

On October 3, 2024, a state court entered an order vacating "[t]he plea, disposition, and court [decision]" for the first-degree assault count. (Jud. Order 1, *State v. Dopkins*, No. 02-CR-18-3927 (Minn. Dist. Ct. Oct. 3, 2024).) The state-court docket shows a "contested omnibus" hearing set for November 26, 2024. (*See* State-Court Docket.) Mr. Dopkins is being held at the Anoka County Jail, apparently as a pretrial detainee. (*See id.* (noting that as of October 28, 2024, Mr. Dopkins was eligible to post bail).)

## II.   MR. DOPKINS'S FEDERAL COMPLAINT.

This action began on June 13, 2024, when the Court received Mr. Dopkins's complaint. By then, the Minnesota Court of Appeals had reversed Mr. Dopkins's first-degree-assault conviction. The complaint raised at least three distinct concerns, prompting the Court to direct Mr. Dopkins to choose which set of claims he intended to pursue here. (*See, e.g.*, Doc. 18 at 2.[3])

In a filing received on October 2, 2024, Mr. Dopkins stated he wanted this action to focus on claims that certain police seizures of his property—and retention of the property

---

[2] The Court of Appeals affirmed the state-court judgment "in all other respects," leaving Mr. Dopkins's violent-threat conviction intact. *Dopkins*, 2024 WL 2813952, at *8.

[3] Specifically, the Court noted that the complaint raised (1) claims of unlawful arrest, imprisonment, and search and seizure; (2) claims of excessive force during Mr. Dopkins's June 2018 arrest; and (3) claims about conditions in the Anoka County Jail. (*See* Doc. 18 at 2 (citing Doc. 1).)

3

despite his requests for the property's return—were improper. (*See* Doc. 19 at 1.[4]) The Court views this choice as, at least in part, incorporating the argument that Mr. Dopkins endured unlawful searches and seizures during the investigation leading to his conviction.

When limited to claims of allegedly unlawful searches and seizures, the complaint's core allegations are as follows. Mr. Dopkins contends that the City of Fridley's police department acted unconstitutionally in its actions leading to his arrest and conviction. (*See, e.g.*, Doc. 1 at 13.) He asserts that property confiscations during the investigation violated his constitutional rights and that the department's seizures constitute theft. (*See id.*) The complaint also names individual police officers, alleging they engaged in unconstitutional conduct during his investigation and prosecution. (*See, e.g., id.* at 14–15, 17–27.) Additionally, Mr. Dopkins seeks to sue his prosecutor, the Anoka County Attorney's Office, two judges, his public defender, and the relevant public defender's office, claiming they failed to meet their constitutional duties to him. (*See id.* at 27–34.)

The complaint requests damages of "upwards of $117 trillion each," although it is not clear whether that amount would be due on each claim, from each named defendant, or both. (*Id.* at 12.)

---

[4] The filing lacks clarity, but the Court highlights this statement of Mr. Dopkins: "[t]his complaint is against Fridley Police Department and [its] various related previously named employees, in personal and professional senses; [f]or theft of, on me, upwards of $9,000.00, also gold and silver (no probable cause, [and] innocent until proven guilty) and no return upon numerous demands, as well as theft of my property." (Doc. 19 at 1.)

4

## ANALYSIS

Rather than pay this action's filing fee, Mr. Dopkins submitted an IFP application. Mr. Dopkins's financial status qualifies him for IFP status. But under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [a case proceeding IFP] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2). Courts in this District routinely use § 1915(e)(2) to dismiss portions of IFP proceedings when appropriate. *See, e.g.*, *Ash v. L. Enf't Agencies*, No. 23-cv-2860 (JWB/LIB), 2024 WL 1118777, at *2 n.5 (D. Minn. Mar. 14, 2024) (citing cases), *aff'd*, No. 24-1853, 2024 WL 4626488 (8th Cir. June 20, 2024).

When determining whether a complaint states an actionable claim, courts accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)). A complaint's factual allegations need not be detailed, but they must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A court's consideration of whether a pleading states a claim is "context-specific" and requires the court to "draw on its judicial experience and common sense." *Id.* at 679; *see also, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)) (cleaned up). Courts liberally construe

5

*pro se* complaints like Mr. Dopkins's, but such pleadings must still allege sufficient facts to support their claims. *See, e.g.*, *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741–42 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

## II.   DISMISSAL OF ABANDONED CLAIMS.

As noted above, Mr. Dopkins's response indicates he intends to pursue only his improper-search-and-seizure claims in this action. The Court therefore recommends dismissing without prejudice the complaint's two other sets of claims—i.e., Mr. Dopkins's excessive-force claims arising from his June 2018 arrest, as well as his claims about conditions at the Anoka County Jail.

## III.   CHALLENGES TO CONVICTIONS.

The Court is frankly unsure whether Mr. Dopkins means to challenge only his property's seizure and retention, or whether he also wants to use his arguments about the seizure to mount challenges to his convictions. In any event, any challenges to his convictions fail for two reasons based on the facts presented at this time.

First, Mr. Dopkins's violent-threats conviction remains intact after the Minnesota Court of Appeals's decision. So if the complaint's arguments target this conviction's validity, the so-called favorable-termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994), bars those claims. *Heck* prohibits plaintiffs from pursuing § 1983 damages claims that would necessarily invalidate their convictions or sentences without first achieving "favorable termination." *Id.* at 486–87; *see also, e.g.*, *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Heck*). Favorable termination occurs when "the conviction or sentence has been reversed on direct appeal, expunged by executive order,

6

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487; *see also, e.g.*, *Mitchell*, 28 F.4th at 895 (quoting *Heck*). Mr. Dopkins's violent-threats conviction has not been favorably terminated, so he cannot pursue damages claims that would undermine that conviction.

Mr. Dopkins's first-degree-assault conviction presents a less straightforward analysis. It is true that the matter has been reversed on direct appeal (seemingly meeting *Heck*'s "favorable termination" requirement), but reversed based on error that permitted the continued prosecution of this charge. Under such circumstances, the Court cannot find that favorable termination has occurred. After all, there has been no "termination" whatsoever—the matter is subject to current prosecution as of this writing. Few cases directly address this identical issue, but related statute-of-limitations cases—in particular, the Supreme Court's decision in *McDonough v. Smith*, 588 U.S. 109 (2019)—provides guidance. In that case, Edward McDonough had served as a county elections commissioner. *See id.* at 112. When local officials in Troy, New York, alleged ballot forgery in a primary election, Youel Smith investigated the matter and allegedly fabricated evidence to get Mr. McDonough indicted. *See id.* at 112–13. Two trials followed; Mr. Smith allegedly used fabricated evidence and false testimony in both. *See id.* at 113. The first trial ended in a mistrial; the second concluded on December 21, 2012, with McDonough's acquittal. *See id.* Mr. McDonough later filed § 1983 claims against Mr. Smith, but a district court and the United States Court of Appeals for the Second Circuit determined that his relevant claims were untimely. *See id.* at 113–14.

7

The Supreme Court ruled that Mr. McDonough's § 1983 limitations period began only after his criminal proceedings' "favorable termination"—meaning here his acquittal after the second trial. Key were practical aspects of the *Heck* favorable-termination rule. Mr. McDonough's fabricated-evidence claim challenged his prosecution's validity. Letting such claims proceed before a criminal case's conclusion would risk creating conflicting civil and criminal outcomes, undermining judicial economy and federalism. *See id.* at 116–20. And so the Court determined that Mr. McDonough's § 1983 claim accrued only after the second-trial acquittal. *See id.* at 125; *see also, e.g.*, *Hester v. St. Louis Metro. Police Dep't*, No. 21-cv-345 (RWS), 2021 WL 4439242, at *2 (E.D. Mo. Sept. 28, 2021) (citing *McDonough*).

*McDonough* suggests that Mr. Dopkins's § 1983 claims challenging his first-degree-assault conviction remain premature. His favorable termination will occur only when he no longer faces potential conviction. *Heck*'s favorable-termination requirement thus bars any claims suggesting that Defendants' unconstitutional property-seizure conduct caused an unconstitutional conviction.

Given that Mr. Dopkins cannot meet *Heck's* favorable-termination requirement concerning either charge for which he has faced prosecution, the Court recommends dismissing the complaint to the extent that its § 1983 claims would challenge his state-law prosecutions. That said, if, during the pendency of this civil action, the charges that the State of Minnesota is currently prosecuting reach a resolution, the parties are ordered to file joint notice of such resolution on this action's docket within 14 days of that resolution.

In that notice, the parties shall also provide their respective positions on the impact of that state action's outcome on this federal matter.

### III.    REMAINING SEIZURE CLAIMS.

Mr. Dopkins's remaining claims concern certain property—he refers here to "money, gold, silver and cryptocurrency." (*See, e.g.*, Doc. 1 at 16.) Two issues emerge here: the material's initial seizure and its continued retention. As best as the Court can tell, any claims by Mr. Dopkins challenging the initial seizures would likely target his conviction. (In other words, any alleged constitutional defects in relevant property-seizure warrants would presumably present issues potentially invalidating Mr. Dopkins's arrest.) The Court therefore recommends dismissing these claims and dismissing from this action any Defendants who only participated in initially seizing Mr. Dopkins's effects.

However, the Court finds Mr. Dopkins should still be able to pursue one narrow § 1983 claim: that his property has been inappropriately retained despite his requests for its return. The complaint appears to allege that only the City of Fridley's police department currently holds this property. (*See* Doc. 1 at 13.) Police departments themselves are not generally suable entities. *See, e.g.*, *Diggs v. City of Osceola*, 270 F. App'x 469, 469 (8th Cir. 2008) (citing *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir.1992)); *Winters v. Winters*, No. 19-CV-3177 (SRN/KMM), 2020 WL 1049145, at *6 n.6 (D. Minn. Feb. 11, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 1043742 (D. Minn. Mar. 4, 2020). The Court therefore construes Mr. Dopkins's remaining claim here as one against the City of Fridley, and the Court will order him to provide service information for the City to advance litigation of that claim.

## IV.  PENDING MOTIONS.

Because part of this action is proceeding, the Court will next address Mr. Dopkins's pending motions. As a threshold matter, the Court grants the IFP application. Mr. Dopkins's payment-related motion requests an exemption from the initial partial filing fee, but he later paid that fee. (*See* Docs. 16 at 1; 17.) The Court therefore denies the motion related to payment as moot.

The repossession-related motion seeks the return of Mr. Dopkins's property and demands that Defendants "pay for their wrongs." (Doc. 4 at 1.) Filed alongside the complaint, this motion seems simply to restate the complaint's relief requests. The Court therefore denies the motion seeking repossession without prejudice; any relief along these lines will follow only from this limited action's successful resolution.

The laptop-related motion requests that Mr. Dopkins be provided a computer with legal-research access. (*See, e.g.*, Doc. 7 at 4.) This request effectively seeks preliminary injunctive relief. But Federal Rule of Civil Procedure 65(a)(1) permits preliminary injunctions only after notifying adverse parties, and Defendants here lack notice of Mr. Dopkins's request. The Court therefore recommends denying this request without prejudice; Mr. Dopkins may submit another preliminary-injunction request as his case proceeds if he thinks it warranted, although he will of course have to follow all relevant procedural rules.

## RECOMMENDATION

Based on the above, as well as on the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Mr. Dopkins's Complaint for Civil Rights Violations Under 42 U.S.C. § 1983 (Doc. 1) be **DISMISSED WITHOUT PREJUDICE** with respect to any claims about excessive force used during Mr. Dopkins's June 2018 arrest and any claims about conditions of confinement at the Anoka County Jail;

2. Mr. Dopkins's Complaint for Civil Rights Violations Under 42 U.S.C. § 1983 (Doc. 1) be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim to the extent that it brings (1) any claims asserting that his convictions in *State v. Dopkins*, No. 2-cr-18-3927 (Minn. Dist. Ct.) are unconstitutional, and (2) any claims that initial seizures of his property as part of the investigation underlying No. 2-cr-18-3927 were unconstitutional;

3. All Defendants be **DISMISSED** from this action except for the "Fridley Police Department," which the Court finds should go forward as the City of Fridley itself as the named defendant; and

4. Mr. Dopkins's laptop-related motion received by the Court on June 24, 2024 (Doc. 7) be **DENIED WITHOUT PREJUDICE.**

## ORDER

Based on the above, and on all of the files, records, and proceedings in this action,

**IT IS ORDERED** that:

1. Mr. Dopkins's application to proceed *in forma pauperis* (Doc. 2) is **GRANTED**;

2. Mr. Dopkins's repossession-related motion received by the Court on June 13, 2024 (Doc. 4) is **DENIED**;

3. Mr. Dopkins's payment-related motion received by the Court on July 15, 2024 (Doc. 16) is **DENIED** as moot;

11

4. Mr. Dopkins must submit a properly completed Marshal Service Form for Defendant City of Fridley. If he does not complete and return the Marshal Service Form within 30 days of this Order's date, the Court will recommend dismissing this matter without prejudice for failure to prosecute. Marshal Service Forms will be provided to Mr. Dopkins by the Court;

5. The U.S. Marshals Service is directed to effect service of process on Defendant City of Fridley consistent with Rule 4(j) of the Federal Rules of Civil Procedure;

6. Mr. Dopkins must pay the unpaid balance of this action's statutory filing fee—i.e., $313.96—in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court shall provide notice of this requirement to the authorities at the institution where Mr. Dopkins is confined; and

7. If, during the pendency of this civil action, the charges that the State of Minnesota is currently prosecuting reach a resolution, the parties are ordered to file joint notice of such resolution on this action's docket within 14 days of that resolution. In that notice, the parties shall also provide their respective positions on the impact of that state action's outcome on this federal matter.

Date: November 19, 2024          *s/Douglas L. Micko*
                                 DOUGLAS L. MICKO
                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).